[No. 895.]

## JOHN STEEL, RESPONDENT, *v.* SOLID SILVER GOLD AND SILVER MINING COMPANY, APPELLANT.

PLEADINGS—ADMISSIONS IN ANSWER—AUTHORITY OF PRESIDENT OF CORPORATION—NONSUIT.—Plaintiff testified that he was employed by one Hewson, who claimed to be the president of the defendant; the answer was verified by Hewson as defendant's president, and admitted that plaintiff went into defendant's employ, etc.: *Held*, that such admissions and proofs were *prima facie* evidence that Hewson was authorized to employ the plaintiff, and that the court did not err in refusing a nonsuit.

APPEAL from the District Court of the First Judicial District, Storey County.

The facts are stated in the opinion.

*Lewis & Deal*, for Appellant.

*A. B. Elliott*, for Respondent.

By the Court, LEONARD, J.:

This is an action to recover nine hundred and forty-nine dollars, alleged to be due plaintiff from defendant for labor performed by the former for the latter, as defendant's superintendent, between September 1, 1876, and March 15, 1877, at an agreed price of one hundred and fifty dollars in gold coin per month, and for money paid out by plaintiff for defendant; also, for goods sold and labor performed by other persons for defendant, at its special instance and request, the latter demands having been assigned to plaintiff. The jury found a verdict for plaintiff in the sum of eight hundred and seventy-two dollars. Defendant moved for a new trial on the grounds of insufficiency of evidence to justify the verdict and errors in law occurring at the trial. This appeal is taken from the order overruling the motion for a new trial, and from the judgment.

After plaintiff rested, defendant moved for a judgment of nonsuit, "because there was no showing that defendant ever employed plaintiff, or that one Hewson (who did employ him), was an officer of, or had any authority to act for, defendant." The court overruled the motion, and its action

in this regard only is urged by counsel for defendant as error.

Under the pleadings in this case, it is not necessary to decide whether or not the president of a mining company can bind the latter by contracts of employment made, or for supplies used, in the usual business of such company, without authority to enter into the same from the board of trustees.

In the first count of the complaint plaintiff alleges that on or about September 1, 1876, he and defendant entered into an agreement, whereby plaintiff undertook and agreed to perform the duties of superintendent of defendant's mining claim in Storey county, and defendant agreed to pay plaintiff therefor one hundred and fifty dollars in United States gold coin per month; that plaintiff entered the employ of defendant under such contract on said day, and so continued until March 15, 1877; that by reason of the premises defendant became indebted to him on account of said labor in the sum of nine hundred and seventy-five dollars, no part of which has been paid, etc.

In the answer defendant denies " that at the time in said complaint alleged, or at any time, the plaintiff and defendant made or entered into the alleged agreement in said complaint set forth;" denies " that defendant undertook, promised or agreed to pay plaintiff for the alleged services  *  * or for any services to be done or performed by plaintiff the sum of one hundred and fifty dollars per month, or any sum whatever;" denies " that plaintiff continued to work for defendant to and including the fifteenth day of March, 1877, or to any date later than the first day of November, 1876;" denies " that defendant became, is, or ever was, indebted to plaintiff in the sum of nine hundred and seventy-five dollars, or in any other sum, except as hereinafter set forth;" that is to say: "On or about November 1, 1876, defendant and plaintiff accounted together of and concerning all transactions and dealings theretofore had or existing between said parties, and thereupon found the sum of two hundred and thirty-nine dollars due plaintiff from defendant; that defendant at divers times from said November 1, 1876, to

March 1, 1877, paid to plaintiff the sum of one hundred and seventy-one dollars; that defendant tendered to plaintiff on or about March 1, 1877, at Virginia city, the further sum of sixty-eight dollars in full payment and satisfaction of said indebtedness, and is still ready and willing to pay said sum to plaintiff, but that plaintiff refused at the time of such tender, and still refuses to receive the same; that since said first day of November said plaintiff has neither done nor performed any work, labor or services, or paid out any money for said defendant."

It can not be doubted under the pleadings stated in substance above, that there was no necessity of showing by proof, that Hewson was authorized by the trustees of defendant to employ plaintiff. At the time the motion for nonsuit was made, plaintiff had testified that he was employed by Hewson alone, who claimed to be defendant's president, and letters had been introduced signed by Hewson as president and Applegate as secretary, dated at the office of the company in San Francisco, recognizing plaintiff as defendant's agent, and giving orders as to plaintiff's duties. Plaintiff had testified as to the period of his employment and the character of his services; also that Hewson in September, 1876, represented to plaintiff that he (Hewson) had informed the trustees and stockholders of defendant that plaintiff was to receive four dollars per day; that he refused to continue work for such sum; that Hewson then agreed to pay him forty-four dollars for the eleven days' work in July, and one hundred and twenty-five dollars for the month of August, and thereafter one hundred and fifty dollars per month. The answer was verified by Hewson, who swore that he was defendant's president. By the answer, defendant admitted that plaintiff went into defendant's employ September 1, 1876, and so continued until November 1, 1876. Such admission, together with plaintiff's testimony that he was employed by Hewson as president of defendant, and by no one else, was *prima facie* evidence at least that Hewson was authorized to enter into a contract of employment. It was, then, for the jury to decide from the evidence what amount, if anything, defendant agreed to pay

plaintiff, as well as the length of time he continued in such employment. In the second count of the complaint it is alleged, that between September 1 and October 1, 1876, Peasly & Mercer, at the special instance and request of defendant, performed labor in and about defendant's mine, which labor was reasonably worth the sum of forty-seven dollars; that defendant agreed to pay Peasly & Mercer said sum; that no part had been paid, and that on the seventeenth day of March, 1877, Peasly & Mercer sold, assigned and delivered said demand to plaintiff.

In the answer defendant denied that the work was of any greater value than nineteen dollars, and denied also that it promised to pay any sum therefor. There was no denial that defendant ordered the work done, and plaintiff testified that it was ordered by himself and Hewson. Defendant was therefore liable under its denial alone, for the reasonable value of the work as stated in the answer, without proof that Hewson, who ordered it done, had authority to make the order. And a recognition of Hewson's authority to bind defendant to the extent of the reasonable value of Peasly & Mercer's work, was certainly some proof of his authority in relation to his contract with the plaintiff. What we have said of the second count is also true of the third.

The court did not err in denying defendant's motion for a nonsuit; and the order and judgment appealed from are affirmed.